# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRACI M. BARNES and KATINA M. RADDIGAN, individually and on behalf of all others similarly situated, <br><br>                Plaintiffs, <br><br>    v. <br><br> PROLIANCE SURGEONS, INC., P.S., <br><br>                Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## I.  INTRODUCTION

1.     Plaintiffs Traci M. Barnes and Katina M. Raddigan ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, brings this Class Action Complaint against Defendant Proliance Surgeons, Inc., P.S. ("Proliance" or "Defendant") and alleges, upon personal knowledge as to their own actions and their counsel's investigation, and upon information and belief as to all other matters, as follows:

2.     This class action arises from Defendant's continued failure to maintain adequate security protocols in storing and/or transferring Plaintiff's and Class Members' sensitive Personal information, which Plaintiff and Class Members were required to provide Defendant in order to obtain medical services from Defendant.

CLASS ACTION COMPLAINT - 1

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

3.      Four years ago, Defendant's data systems were hacked in a separate data breach.[1] As a result of this prior data breach, Defendant apologized and promised to upgrade its data security.[2]

4.      Despite this prior data breach and Defendant's promise to upgrade its data security practices, Defendant has *still* failed to provide adequate data security which has resulted in yet another data breach. Specifically, on or about February 11, 2023 unknown criminal hackers were able to obtain unauthorized access to Defendant's network and exfiltrate files containing Plaintiff's and Class Members' sensitive information (the "Data Breach") including their names, Social Security numbers, dates of birth, phone numbers, email addresses, driver's license numbers, usernames, passwords, identification information, medical treatment information, health insurance information, and financial account numbers ("PII" and "PHI" or, collectively, "Personal Information").[3]

5.      Plaintiffs are a victim of the Data Breach, having received a breach notice.[4] Plaintiffs brings this class action on behalf of themselves, and all others harmed by Defendant's misconduct.

## II.    PARTIES

6.      Plaintiff Traci M. Barnes is an individual and resident of Snohomish County, Washington. Plaintiff Traci M. Barnes was a patient with Proliance Surgeons in or around 2022 and 2023.

---

[1] *See Notice of Data Security Incident*, PROLIANCE SURGEONS, https://proliancesurgeons.com/wpcontent/ uploads/2020/12/Proliance-Website-Substitute-Notice.pdf (last visited November 29, 2023).
[2] *Id.*
[3] *See Notice of Network Security Incident*, PROLIANCE SURGEONS, https://proliancesurgeons.com/notice-of-network-security-incident/ (last visited November 29, 2023).
[4] *See Notice of Data Breach* dated November 20, 2023 and addressed to Plaintiffs attached hereto as **Exhibit A**.

CLASS ACTION COMPLAINT - 2

7.     Plaintiff Katina M. Raddigan is an individual and resident of Snohomish County, Washington. Plaintiff Katina M. Raddigan was a patient with Proliance Surgeons in or around 2022 and 2023.

8.     Defendant, Proliance Surgeons, Inc., P.S., is a Washington Professional Service Corporation with its principal place of business at 805 Madison Street Suite 901, Seattle, Washington 98104.

### III.    JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs; there are more than 100 members in the proposed class; and at least one Class member is a citizen of a state different from Defendant.

10.     This Court has personal jurisdiction over Defendant because it is a corporation incorporated under the laws of Washington, has its principal place of business in Washington, and does significant business in Washington.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered and operates in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District.

### IV.    FACTUAL BACKGROUND

*Proliance Surgeon, Inc., P.S.'s Business*

12.     Defendant is a health care provider with over 100 locations in Washington.[5] It advertises "400 providers, including over 180 board-certified physicians."[6] Defendant provides medical services to "more than 800,000 patients every year."[7]

---

[5] Why Proliance Surgeons, PROLIANCE SURGEONS, https://proliancesurgeons.com/why-proliancesurgeons/ (last visited November 29, 2023).
[6] *Id.*
[7] *Id.*

CLASS ACTION COMPLAINT - 3

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

13.     As part of its business practices, and as a condition of service, Defendant required individuals to provide copious amounts of sensitive personal and Personal Information as a condition of receiving services including but not limited to the Personal Information compromised in the Data Breach. Furthermore, Defendant stores and maintains the Personal Information of thousands of its current and former patients.

14.     Defendant made promises and representations to Plaintiff and Class Members that the Personal Information collected as part of Defendant's business operations would be kept safe, confidential, and that the privacy of that information would be maintained.

15.     Specifically, Defendant's Privacy Policy provides that:

a.     "Proliance is committed to honoring the privacy of individuals."[8]

b.     "Proliance will not disclose any personal information obtained through the Proliance site."[9]

16.     Furthermore, Defendant promises its patient in its *Notice of Privacy Practices* that:

a.     "Proliance Surgeons, Inc., P.S. is committed to protecting the confidentiality of your health information."[10]

b.     "We are required by law to maintain the privacy of your Protected Health Information (commonly called PHI), even in electronic format, and to notify you following a breach of unsecured PHI."[11]

c.     "We are also required to . . . abide by the practices of this current Notice."[12]

---

[8] *See Disclaimer*, PROLIANCE SURGEONS, https://proliancesurgeons.com/resource/disclaimer/ (last visited November 29, 2023).
[9] *Id.*
[10] Policies, PROLIANCE SURGEONS, https://proliancesurgeons.com/resource/policies/ (last visited November 29, 2023).
[11] *Id.*
[12] *Id.*

CLASS ACTION COMPLAINT - 4

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

d. "This Notice applies to all Proliance Surgeons providers and facilities that provide health care to you."[13]

e. "Certain uses and disclosures of your protected health information will be made only with your written authorization. . . . These uses and disclosures include uses and disclosures not outlined in this Notice and sale of health information."[14]

17.    Defendant also misleads its patients and represents that "[a]t Proliance, we're committed to maintaining the privacy of your health information."[15]

18.    Elsewhere, Defendant promises that the software it uses "provides industry leading privacy and security for our patients' data."[16]

19.    Indeed, Defendant has made numerous misleading representations that Defendant would adequately protect Plaintiff's and Class Members' sensitive Personal Information but has failed to deliver on that promise.

20.    Plaintiff and Class Members, individuals whose Personal Information was in the possession of the Defendant, including current and former patients, relied on the sophistication of Defendant to keep their sensitive and confidential Personal Information securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their sensitive Personal Information.

21.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' sensitive Personal Information, Defendant assumed legal and equitable duties, and

---

[13] *Id.*
[14] *Id.*
[15] *See Medical Records*, PROLIANCE SURGEONS,
https://proliancesurgeons.com/resource/medicalrecords/ (last visited November 29, 2023).
[16] *See Phreesia FAQ*, PROLIANCE SURGEONS,
https://proliancesurgeons.com/resource/phreesia-faq/ (last visited November 29, 2023).

CLASS ACTION COMPLAINT - 5

knew, or should have known, that it was responsible for protecting Plaintiff's and Class Members' sensitive Personal Information from unauthorized disclosure.

22.    Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members, to keep their sensitive Personal Information confidential and to protect it from unauthorized access and disclosure.

23.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their sensitive Personal Information.

24.    Plaintiff and Class Members relied on Defendant to keep their sensitive Personal Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

25.    Plaintiff and Class Members provided their sensitive Personal Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

### Defendant's Pattern of Negligence

26.    As discussed above, Defendant's current Data Breach is not an isolated incident and is in fact a part of a pattern of Defendant's continued negligent data security practices.

27.    The instant Data Breach is the second time that Defendant has experienced a serious data breach within the last few years.[17] Specifically, for over seven months—starting on November 13, 2019, and ending on June 24, 2020—Defendant's data systems were hacked.[18]

---

[17] *See Supra*, at Footnote No. 1.
[18] *Id.*

CLASS ACTION COMPLAINT - 6

This prior data breach exposed the names, zip codes, and payment card information of Defendant's patients.[19]

28.    In response to this prior data breach, Defendant stated that "we deeply regret any worry or inconvenience that this [data breach] may cause you" and "we take information privacy and security very seriously."[20] Moreover, Defendant promised that it would use "enhanced security measures to prevent similar incidents in the future."[21]

29.    Clearly, Defendant has not made good on their promise and its negligence has caused yet another data breach to occur years later.

### Defendant's Data Breach

30.    On or around February 11, 2023, Defendant was hacked and Defendant confirmed that the unauthorized access resulted in the removal of a thousands of files.[22]

31.    Specifically, on May 24, 2023, a full one-hundred and two days *after* the Data Breach, Defendant learned that, as a result of its negligent data security practices, it had exposed its current and former patients' Personal Information including:

a.    Names;

b.    Social Security numbers;

c.    Dates of birth;

d.    Phone numbers;

e.    Email addresses;

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *See Notice of Network Security Incident*, PROLIANCE SURGEONS, https://proliancesurgeons.com/notice-of-network-security-incident/ (last visited November 29, 2023).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

f.    Driver's license numbers;

g.    Usernames;

h.    Passwords;

i.    Identification information;

j.    Medical treatment information;

k.    Health insurance information; and

l.    Financial account numbers.[23]

32.    To make matters even worse, Defendant even further delayed notifying Plaintiff and Class Members until November 21, 2023, a full two-hundred and thirty-eight (238) days after the Data Breach.[24] This substantial delay notifying Plaintiff and Class Members deprived Plaintiff and Class Members of the opportunity to mitigate their injuries and risk of fraud and only further portrays Defendant's wholly inadequate data security and data breach notification practices.

33.    Currently, the precise number of persons injured is unclear. But upon information and belief, the size of the putative class can be ascertained from information in Defendant's custody and control. And upon information and belief, the putative class is over one hundred thousand members—as it includes Defendant's current and former patients.

34.    When Defendant did finally notify Plaintiff and Class Members of the Data Breach, a full two-hundred and thirty-eight (238) days after the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and Class Members:

a.    "review[] financial account statements for any signs of fraudulent activity;"

---

[23] *Id.*

[24] *See Data Breach Report*, MASS. OFFICE CONSUMER AFFAIRS BUS. REG., https://www.mass.gov/doc/data-breach-report-2023/download (last visited November 29, 2023).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

b. "check[] explanation of benefits statements from health insurance providers;"

c. "plac[e] an initial 1-year 'fraud alert' on your credit files;"

d. "contact any of the three major credit bureaus;"

e. "request a 'Security Freeze' on your credit file;"

f. "file a police report in your current city of residence;"

g. "request your free credit reports by calling 1-877-322-8228 or visiting the website www.annualcreditreport.com . . . [then] review them for any discrepancies . . . [l]ook out for accounts you didn't open or inquiries from unauthorized creditors . . . [v]erify that all the information is accurate;"

h. "review the 'explanation of benefits' statements you receive from your health insurance company;"

i. "request copies of your medical records from February 11, 2023, to the present;" and

j. "[r]equest a current year-to-date report from your insurance company, detailing all services provided to you as a beneficiary."[25]

35.    Defendant failed in upholding its duties to Plaintiff and Class Members when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Personal Information. As such, Defendant's negligence has caused widespread injury and monetary damages to Plaintiff and Class Members.

36.    Plaintiff's and Class Members' sensitive Personal Information has been stolen, sold, and on information and belief, reviewed by cybercriminals.

---

[25] *See Notice of Network Security Incident*, PROLIANCE SURGEONS, https://proliancesurgeons.com/notice-of-network-security-incident/ (last visited November 29, 2023).

CLASS ACTION COMPLAINT - 9

37.     Further, the Notice of Data Breach shows that Defendant cannot, or will not, determine the full scope of the Data Breach, as Defendant has been unable to determine precisely what information was stolen and when.

38.     Defendant has done little to remedy its Data Breach. While Defendant has offered some Class Members basic credit monitoring, such offerings are wholly insufficient given the scope of the Data Breach and the type of Personal Information stolen, which includes Plaintiff and Class Members' Social Security Numbers.

### *The Effects of the Data Breach on Plaintiff Traci M. Barnes*

39.     Defendant sent Plaintiff Traci M. Barnes a notice stating that her Personal Information was exposed in the Data Breach on or around February 11, 2023.

40.     Following the Data Breach, Plaintiff Traci M. Barnes experienced a substantial uptick in the number and frequency of spam calls and emails attempting to obtain further Personal Information from her by posing as a mortgage company.

41.     Plaintiff Traci M. Barnes made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to: researching the Data Breach; reviewing credit reports, medical records, credit monitoring, and financial account statements for any indications of actual or attempted identity theft or fraud; researching credit monitoring and identity theft protection services offered by Defendant; and dealing with unwanted spam emails and telephone calls.

42.     Plaintiff Traci M. Barnes has spent at least 6  hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

43.     As a result of the Data Breach, Plaintiff Traci M. Barne has suffered emotional distress due to the release of her Personal Information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Personal Information for purposes of identity theft and fraud. Plaintiff

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

Traci M. Barnes is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

44.    Plaintiff Traci M. Barnes suffered actual injury from having her Personal Information compromised as a result of the Data Breach including, but not limited to: (a) damage to and diminution in the value of her Personal Information, a form of property that Defendant obtained from Plaintiff Traci M. Barnes; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft and fraud.

45.    As a result of the Data Breach, Plaintiff Traci M. Barnes anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Traci M. Banres is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

### *The Effects of the Data Breach on Plaintiff Katina M. Raddigan*

46. Defendant sent Plaintiff Katina M. Raddigan a notice stating that her Personal Information was exposed in the Data Breach on or around February 11, 2023.

47.    Following the Data Breach, Plaintiff Katina M. Raddigan experienced a substantial uptick in the number and frequency of spam calls and emails attempting to obtain further Personal Information from her by posing as a mortgage company.

48.    Plaintiff Katina M. Raddigan made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to: researching the Data Breach; reviewing credit reports, medical records, credit monitoring, and financial account statements for any indications of actual or attempted identity theft or fraud; researching credit monitoring and identity theft protection services offered by Defendant; and dealing with unwanted spam emails and telephone calls.

49.    Plaintiff Katina M. Raddigan has spent at least 6  hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

50.    As a result of the Data Breach, Plaintiff Katina M. Raddigan has suffered emotional distress due to the release of her Personal Information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Personal Information for purposes of identity theft and fraud. Plaintiff Katina M. Raddigan is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

51.    Plaintiff Katina M. Raddigan suffered actual injury from having her Personal Information compromised as a result of the Data Breach including, but not limited to: (a) damage to and diminution in the value of her Personal Information, a form of property that Defendant obtained from Plaintiff Katina M. Raddigan; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft and fraud.

52.    As a result of the Data Breach, Plaintiff Katina M. Raddigan anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Katina M. Raddigan is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

### The Effects of the Data Breach on Plaintiff and Class Members

53.    Plaintiff's experiences in connection with the breach are typical of those of the Class Members.

54.    Given the sensitive nature of the Personal Information stolen in the Data Breach, hackers have the ability to commit identify theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future.

55.    As a result of the Data Breach, Plaintiff and Class Members will have to take a variety of steps to monitor for and safeguard against identity theft, and they are at a much greater risk of suffering such identity theft. In addition, these victims of the Data Breach are at a heightened risk of potentially devastating financial identity theft. As the Bureau of Justice

CLASS ACTION COMPLAINT - 12

Statistics reports, identity theft causes its victims out-of-pocket monetary losses and costs the nation's economy billions of dollars every year.[26]

56.    In fact, many victims of the Data Breach have already experienced harms as a result of the Data Breach, including, but not limited to, identity theft, financial fraud, tax fraud, unauthorized lines of credit opened in their names, medical and healthcare fraud, and unauthorized access to their bank accounts. Plaintiff and Class Members have spent and will spend time, money, and effort dealing with the fallout of the Data Breach, including purchasing credit protection services, contacting their financial institutions, checking credit reports, and spending time and effort searching for unauthorized activity.

57.    The Personal Information exposed in the Data Breach is highly coveted and valuable on underground or black markets. A cyber "black market" exists in which criminals openly post and sell stolen consumer information on underground internet websites known as the "dark web," exposing consumers to identity theft and fraud for years to come. Identity thieves can use the Personal Information to: (a) create fake credit cards that can be swiped and used to make purchases as if they were the real credit cards; (b) reproduce stolen debit cards and use them to withdraw cash from ATMs; (c) commit immigration fraud; (d) obtain a fraudulent driver's license or ID card in the victim's name; (e) obtain fraudulent government benefits; (f) file a fraudulent tax return using the victim's information; (g) commit medical and healthcare-related fraud; (h) access financial accounts and records; and (i) commit any number of other frauds, such as obtaining a job, procuring housing, or giving false information to police during an arrest.

58.    Consumers are injured every time their data is stolen and placed on the Dark Web, even if they have been victims of previous data breaches. Not only is the likelihood of identity theft increased, but the dark web is not like Google or eBay. Each data breach puts victims at risk

---

[26] *See* U.S. Dept. of Justice, Bureau of Justice Statistics, *Victims of Identity Theft, 2012* (Dec. 2013), http://www.bjs.gov/content/pub/pdf/vit12.pdf (last visited November 29, 2023).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

of having their information uploaded to different dark web databases and viewed and used by different criminal actors.

59.     Exposure of this information to the wrong people can have serious consequences. Identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that respondents to their surveys in 2018-2020 described that the identity theft they experienced affected their ability to get credit cards and obtain loans, such as student loans and mortgages.[27] For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

60.     Annual monetary losses from identity theft are in the billions of dollars. According to a Presidential Report on identity theft produced in 2007:

> In addition to the losses that result when identity thieves fraudulently open accounts . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.
>
> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.[28]

---

[27] *See* Identity Theft Resource Center, *2021 Consumer Aftermath Report*, https://www.idtheftcenter.org/publication/identity-theft-the-aftermath-study/ (last visited November 29, 2023).

[28] FTC, *Combatting Identity Theft A Strategic Plan* (April 2007), https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf (last visited November 29, 2023).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

61.    The unauthorized disclosure of Social Security numbers can be particularly damaging because Social Security numbers cannot easily be replaced. To obtain a new number, a person must prove, among other things, that he or she continues to be disadvantaged by the misuse. Thus, under current rules, no new number can be obtained until damage has been done. Furthermore, as the Social Security Administration warns:

> [A] new number probably won't solve all your problems. This is because other governmental agencies (such as the Internal Revenue Service and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security number, you shouldn't use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information isn't associated with your new number, the absence of any credit history under your new number may make it more difficult for you to get credit.[29]

56.    According to the Attorney General of the United States, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[30] Indeed, as explained recently:

> The ubiquity of the SSN as an identifier makes it a primary target for both hackers and identity thieves. . . . When data breaches expose SSNs, thieves can use these numbers—usually combined with other pieces of data—to impersonate individuals and apply for loans, housing, utilities, or government benefits. Additionally, this information may be sold on the black market to other hackers.[31]

---

[29] *See Identity Theft and Your Social Security Number* (July 2021), Social Security Administration, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited November 29, 2023).
[30] *See Fact Sheet: The Work of the President's Identity Theft Task Force*, DOJ 06-636, 2006 WL 2679771 (Sep. 19, 2006).
[31] *See* Daniel J. Marcus, *The Data Breach Dilemma: Proactive Solutions for Protecting Consumers' Personal Information*, 68 Duke L.J. 555, 564-65 (2018).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

57.     As the result of the Data Breach, Plaintiff and Class Members are likely to suffer economic loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

    a.  losing the inherent value of their Personal Information;

    b.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    c.  costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

    d.  lowered credit scores resulting from credit inquiries following fraudulent activities;

    e.  costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

    f.  the continued imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Information being in the possession of one or many unauthorized third parties.

58.     Even in instances where a consumer is reimbursed for a financial loss due to identity theft or fraud, that does not make that individual whole again, as there is typically significant time and effort associated with seeking reimbursement that is not refunded. The Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" relating to identity theft or fraud.[32]

59.     There may also be a significant time lag between when personal information is stolen and when it is actually misused. According to the GAO, which conducted a study regarding data breaches:

    [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit

---

[32] E. Harrell, U.S. Department of Justice, *Victims of Identity Theft, 2014* (revised Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited November 29, 2023).

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[33]

### *Defendant Failed to Comply with FTC Guidelines*

60.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

61.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[34] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[35]

62.     The FTC further recommends that companies not maintain personally identifiable information longer than is needed for authorization of a transaction; limit access to sensitive data;

---

[33] U.S Government Accountability Office Report to Congressional Requesters, *Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007), http://www.gao.gov/new.items/d07737.pdf (last visited November 29, 2023).

[34] *See Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.bulkorder.ftc.gov/system/files/publications/2_9-00006_716a_protectingpersinfo-508.pdf (last visited November 29, 2023).

[35] *Id.*

CLASS ACTION COMPLAINT - 17

require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

63.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

64.     These FTC enforcement actions include actions against healthcare providers like Defendant. *See, e.g., In the Matter of Labmd, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.")

65.     Defendant failed to properly implement basic data security practices.

66.     Defendant's failure to employ reasonable and appropriate measures to protect against and detect unauthorized access to patients' Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

67.     Defendant was at all times fully aware of its obligation to protect the Personal Information of patients. Defendant was also aware of the significant repercussions that would result from their failure to do so.

***Defendant Failed to Comply with Industry Standards***

CLASS ACTION COMPLAINT - 18

68.     As shown above, experts studying cyber security routinely identify healthcare providers as being particularly vulnerable to cyberattacks because of the value of the Personal Information which they collect and maintain.

69.     Several best practices have been identified that a minimum should be implemented by healthcare providers like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data, and; limiting which employees can access sensitive data.

70.     Other best cybersecurity practices that are standard in the healthcare industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

71.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

72.     These foregoing frameworks are existing and applicable industry standards in the healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the data breach.

***Defendant's Conduct Violates HIPAA and Evidences Their Insufficient Data Security***

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

73.    The Health Insurance Portability and Accountability Act ("HIPAA") requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information.

74.    Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of Personal Information. Safeguards must include physical, technical, and administrative components.

75.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Personal Information like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

76.    A data breach such as the one Defendant experienced, is considered a breach under the HIPAA Rules because there is an access of private health information ("PHI") not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, "the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." See 45 C.F.R. 164.40.

**77.**    Defendant's Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

### V.    CLASS ACTION ALLEGATIONS

78.    Plaintiffs bring this nationwide class action on behalf of all others similarly situated pursuant to rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

79.     Excluded from the Class are the following: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, and any judge to whom this case is assigned, as well as his or her staff and immediate family.

80.     Plaintiff reserves the right to amend the Class definition.

81.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

82.     Numerosity, Fed R. Civ. P. 23(a)(1): The proposed Class consists of thousands of members—far too many to join in a single action.

83.     Ascertainability. Class Members are readily identifiable from information in Defendant's possession, custody, or control.

84.     Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of Class Members' claims, as each arise from the same Data Breach, the same alleged negligence of and/or statutory violations by Defendant, and the same unreasonable manner of notifying individuals regarding the Data Breach.

85.     Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff's interests do not conflict with those of the Class. Plaintiff has retained counsel experienced in complex class action litigation and data privacy to vigorously prosecute this action on behalf of the Class, including in the capacity as lead counsel.

86.     Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Plaintiff and Class Members' claims raise predominantly common factual and legal questions that can be answered for all Class Members through a single class-wide proceeding. For example, to resolve any Class Member's claims, it will be necessary to answer the following questions: (a) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Personal Information compromised in the Data Breach; (b) Whether Defendant's conduct was negligent; and (c) Whether Plaintiff and the Class are entitled to damages and/or injunctive relief.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

87.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): In addition to satisfying the prerequisites of <u>Rule </u>23(a), Plaintiff satisfies the requirements for maintaining a class action under <u>Rule</u>23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class Members, and a class action is superior to individual litigation or any other available methods for the fair and efficient adjudication of the controversy. The damages available to individual plaintiffs are insufficient to make litigation addressing Defendant's privacy practices economically feasible in the absence of the class action procedure.

88.    The nature of this action and the nature of the laws available to Plaintiffs and Class members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class  members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and  legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each  Class member to recover on the cause of action alleged;  and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

89.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action..

90.    Adequate notice can be given to Class members directly using information maintained in Defendant's records.

91.    Unless a class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class members, Defendant may continue to refuse to provide proper

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

notification to Class members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this complaint.

92.     In the alternative, class certification is appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class Members as a whole.

## VI.    CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
*Claim of Relief for Plaintiff and Class Members and Against Defendant*

93.     Plaintiff incorporates by reference all foregoing factual allegations.

94.     Defendant collected and transferred Personal Information from Plaintiff and Class Members and had a corresponding duty to protect such information from unauthorized access.

95.     Defendant failed to inform Plaintiff and Class Members that its systems were inadequate to safeguard sensitive Personal Information and that transferring Personal Information could lead to cybercriminals gaining access to sensitive Personal Information.

96.     The sensitive nature of the Personal Information and economic value of it to hackers necessitated security practices and procedures sufficient to prevent unauthorized access to the Personal Information.

97.     Defendant failed to implement and maintain adequate security practices and procedures to prevent the Data Breach.

98.     Defendant likewise failed to test, update, and patch (including curing known vulnerabilities) its systems as necessary.

99.     It was reasonably foreseeable to Defendant that its failure to implement and maintain reasonable security procedures and practices would leave the sensitive Personal

CLASS ACTION COMPLAINT - 23

Information in its systems vulnerable to breach and could thus expose the owners of that information to harm.

100.    Furthermore, given the known risk of major data breaches, including the 2021 breach of the Washington State Auditor's Office, Plaintiff and Class Members are part of a well-defined, foreseeable, finite, and discernible group that was at high risk of having their Personal Information stolen.

101.    Defendant's duty of care arose as a result of its knowledge that individuals trusted Defendant to protect their confidential data that they provided to it. Only Defendant was in a position to ensure that its own protocols were sufficient to protect against the harm to Plaintiff and Class Members from a data breach of its own systems.

102.    Defendant also had a duty to use reasonable care in protecting confidential data because it committed to comply with industry standards for the protection of Personal Information and committed to the public to protect the privacy of information the public provided Defendant.

103.    Defendant knew, or should have known, of the vulnerabilities in its security practices and procedures, and the importance of adequate security to patients and the owners of sensitive data.

104.    Plaintiff and Class Members have suffered harm as a result of Defendant's negligence. These victims suffered diminished value of their sensitive Personal Information. Plaintiff and Class Members also lost control over the Personal Information exposed, which subjected each of them to a greatly enhanced risk of identity theft, medical identity theft, credit and bank fraud, Social Security fraud, tax fraud, and myriad other types of fraud and theft, in addition to the time and expenses spent mitigating those injuries and preventing further injury.

## COUNT II
## NEGLIGENCE *PER SE*
### *Claim of Relief for Plaintiff and Class Members and Against Defendant*

105.    Plaintiff incorporates by reference all foregoing factual allegations.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

106.    Pursuant to Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the Personal Information of Plaintiff and Class Members.

107.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect personal information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

108.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Personal Information and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of Personal Information it obtained and stored, and the foreseeable consequences of the Data Breach for companies of Defendant's magnitude, including, specifically, the immense damages that would result to Plaintiff and Class Members due to the valuable nature of the Personal Information at issue in this case—including Social Security numbers.

109.    Defendant's violations of Section 5 of the FTC Act constitute negligence *per se*.

110.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

111.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

112.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to determine how their Personal Information is used; (iii) the

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

compromise, publication, and/or theft of their Personal Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Personal Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information of current and former patients in their continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

113.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information in their continued possession.

<u>**COUNT III**</u>
**BREACH OF IMPLIED CONTRACT**
***Claim of Relief for Plaintiff and Class Members and Against Defendant***

114.    Plaintiff incorporates by reference all foregoing factual allegations.

115.    Plaintiff's and Class Members' Personal Information was provided to Defendant as part of medical services that Defendant provided to Plaintiff and Class Members.

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

116.    Plaintiff and Class Members agreed to pay Defendant for medical care and services.

117.    Defendant and the Plaintiff and Class Members entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the security of Plaintiff's and Class Members' Personal Information, whereby, Defendant was obligated to take reasonable steps to secure and safeguard Plaintiff's and Class Members' Personal Information.

118.    Defendant had an implied duty of good faith to ensure that the Personal Information of Plaintiff and Class Members in its possession was only used in accordance with its contractual obligations.

119.    Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' Personal Information and to comply with industry standards and applicable laws and regulations for the security of this information.

120.    Under these implied contracts for data security, Defendant was further obligated to provide Plaintiff and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their Personal Information.

121.    Defendant breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' Personal Information, resulting in the Data Breach.

122.    Defendant further breached the implied contract by providing untimely notification to Plaintiff and Class Members who may already be victims of identity fraud or theft or are at present risk of becoming victims of identity theft or fraud.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

123.    The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

124.    As a result of Defendant's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain.

125.    Had Defendant disclosed that its data security was inadequate, neither the Plaintiff or Class Members, nor any reasonable person would have entered into such contracts with Defendant.

126.    As a result of Data Breach, Plaintiff and Class Members suffered actual damages resulting from the theft of their Personal Information, as well as the loss of control of their Personal Information, and remain at present risk of suffering additional damages.

127.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

128.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## COUNT IV
## INVASION OF PRIVACY

### *Claim of Relief for Plaintiff and Class Members and Against Defendant*

129.    Plaintiff incorporates by reference all foregoing factual allegations.

130.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their highly sensitive and confidential Personal Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

131.    Defendant owed a duty to its current and former patients, including Plaintiff and Class Members, to keep this information confidential.

132.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class Members' Personal Information is highly offensive to a reasonable person.

133.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and Class Members disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their Personal Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

134.    The Data Breach constitutes an intentional interference with Plaintiff's and Class Member's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

135.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

136.    Defendant acted with a knowing state of mind when it failed to notify Plaintiff and Class Members in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

137.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and Class Members.

138.    As a proximate result of Defendant's acts and omissions, the private and sensitive Personal Information of Plaintiff and Class Members were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and Class Members to suffer damages (as detailed *supra*).

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

139.    Furthermore, on information and belief, Plaintiff's and Class Members' Personal Information has already been published—or will be published imminently—by cybercriminals on the dark web.

140.    Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members since their Personal are still maintained by Defendant with their inadequate cybersecurity system and policies.

141.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Personal Information of Plaintiff and Class Members.

142.    In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class Members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## <u>COUNT V</u>
## UNJUST ENRICHMENT

### *Claim of Relief for Plaintiff and Class Members and Against Defendant*

143.    Plaintiff incorporates by reference all foregoing factual allegations.

144.    This claim is pleaded in the alternative to the breach of implied contract claim.

145.    Plaintiff and Class Members conferred a benefit upon Defendant. Defendant benefitted from using their payment and Personal Information to provide medical services. Furthermore, Defendant benefitted from using their Personal Information to collect payment.

146.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members (or their third-party agents). Furthermore, Defendant benefited from

CLASS ACTION COMPLAINT - 30

receiving Plaintiff's and Class Members' payment and Personal Information, as they were used to provide medical services.

147.    Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Personal Information that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

148.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information.

149.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

150.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class Members' Personal Information and payment because Defendant failed to adequately protect their Personal Information.

151.    Plaintiff and Class Members have no adequate remedy at law.

152.    Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

## COUNT VI
## VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT (CPA) RCW 19.86

### *Claim of Relief for Plaintiff and Class Members and Against Defendant*

153.    Plaintiff incorporates by reference all foregoing factual allegations.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

154.    The Washington State Consumer Protection Act, RCW 19.86.020 (the "CPA") prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as those terms are described by the CPA and relevant case law.

155.    Defendant is a "person" as described in RWC 19.86.010(1).

156.    Defendant engages in "trade" and "commerce" as described in RCW 19.86.010(2) in that it engages in the sale of services and commerce directly and indirectly affecting the people of the State of Washington.

157.    By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the CPA, in that Defendant's practices were injurious to the public interest because they injured other persons, had the capacity to injure other persons, and have the capacity to injure other persons.

158.    In the course of conducting its business, Defendant committed "unfair or deceptive acts or practices" by, among other things, knowingly failing to ensure the safeguarding and protection of Plaintiff's and Class Members' PII by the entities to whom it provided that PII, and by violating the common law alleged herein in the process. Plaintiff and Class Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. As described above, Defendant's wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

159.    Defendant also violated the CPA by concealing from Plaintiff and Class Members information regarding the unauthorized release and disclosure of their PII. If Plaintiff and Class Members had been notified in an appropriate fashion, and had the information not been hidden from them, they could have taken precautions to safeguard and protect their PII and identities.

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

160.     Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair or deceptive acts or practices" in violation of the CPA in that Defendant's wrongful conduct is substantially injurious to other persons, had the capacity to injure other persons, and has the capacity to injure other persons.

161.     The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

162.     As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the CPA, Plaintiff and Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, among other things, (1) a present and imminent, immediate and the continuing increased risk of identity theft and identity fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (2) invasion of privacy; (3) breach of the confidentiality of their PII; (5) deprivation of the value of their Private Information, for which there is a well-established national and international market; and/or (6) the financial and temporal cost of monitoring credit, monitoring financial accounts, and mitigating damages.

163.     Unless restrained and enjoined, Defendant will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of herself and Class Members, seek restitution and an injunction prohibiting Defendant from continuing such wrongful conduct, and requiring Defendant to ensure the safeguarding and

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

protection of Plaintiff's and Class Members' Personal Information by the entities to whom it provides that Personal Information.

164.    Plaintiff, on behalf of herself and Class Members, also seeks to recover actual damages sustained by each Class Member together with the costs of the suit, including reasonable attorneys' fees. In addition, Plaintiff, on behalf of himself and Class Members, requests that this Court use its discretion, pursuant to RCW 19.86.090, to increase the damages award for each Class Member by three times the actual damages sustained, not to exceed $25,000.00 per Class Member.

## COUNT VII
### VIOLATION OF WASHINGTON DATA BREACH DISCLOSURE LAW
### RCW 19.255.005, *et seq.*
### *Claim of Relief for Plaintiff and Class Members and Against Defendant*

165.    Plaintiff incorporates by reference all foregoing factual allegations.

166.    Under RCW § 19.255.010(2), "[a]ny person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

167.    Upon information and belief, this statute applies to Defendant because Defendant does not own nor license the Personal Information in question. Instead, the owners and/or licensees of the Personal Information are Plaintiff and Class Members.

168.    Here, the Data Breach led to "unauthorized acquisition of computerized data that compromise[d] the security, confidentiality, [and] integrity of personal information maintained

CLASS ACTION COMPLAINT - 34

by" Defendant, leading to a "breach of the security of [Defendant's] systems," as defined by RCW § 19.255.010.

169.    Defendant failed to disclose that the Personal Information, of Plaintiff and Class Members, that had been compromised "immediately" upon discovery, and thus unreasonably delayed informing Plaintiff and the proposed Class about the Data Breach.

170.    In fact, Defendant appears to have delayed notifying its current and former patients until November 21, 2023—a full two-hundred and eighty-three (283) days after the Data Breach.

171.    Thus, Defendant violated the Washington Data Breach Disclosure Law.

### COUNT VIII
### VIOLATION OF WASHINGTON UNIFORM HEALTH CARE INFORMATION ACT (UHCIA)
### RCW 70.02.005, *et seq.*
### *Claim of Relief for Plaintiff and Class Members and Against Defendant*

172.    Plaintiff incorporates by reference all foregoing factual allegations.

173.    The UHCIA declares that:

a.    "Health care information is personal and sensitive information that if improperly used or released may do significant harm to a patient's interests in privacy, health care, or other interests." § 70.02.005(1).

b.    "In order to retain the full trust and confidence of patients, health care providers have an interest in assuring that health care information is not improperly disclosed and in having clear and certain rules for the disclosure of health care information." § 70.02.005(3).

c.    "It is the public policy of this state that a patient's interest in the proper use and disclosure of the patient's health care information survives even when

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

the information is held by persons other than health care providers." § 70.02.005(4).

174.    Here, Defendant is a "health care provider" because Defendant "is licensed, certified, registered, or otherwise authorized by the law of this state to provide health care in the ordinary course of business or practice of a profession." § 70.02.010(19).

175.    Under § 70.02.020, "a health care provider, an individual who assists a health care provider in the delivery of health care, or an agent and employee of a health care provider may not disclose health care information about a patient to any other person without the patient's written authorization."

176.    Here, Defendant violated UHCIA because Defendant, via its Data Breach, disclosed health care information to third parties without patient authorization.

## VII.    PRAYER FOR RELIEF

Plaintiff, individually and on behalf of Class Members, request that the Court enter judgment against Defendant as follows:

A.    An order certifying the proposed Class and appointing Plaintiff and their counsel to represent the Class;

B.    An order awarding Plaintiff and Class Members monetary relief, including actual damages and penalties;

C.    An order awarding injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as necessary to protect the interests of Plaintiff and Class Members, including, but not limited to, an order:

i.    Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    Requiring Defendant to protect, including through encryption, all data collected through the course of their businesses in accordance with all applicable regulations, industry standards, and state or local laws;

CLASS ACTION COMPLAINT - 36

iii.    Requiring Defendant to delete, destroy, and purge the Personal Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.    Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Personal Information of Plaintiff and Class Members;

v.     Prohibiting Defendant from maintaining the Personal Information of Plaintiff and Class Members on a cloud-based database;

vi.    Requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.   Requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.  Requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures;

ix.    Requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.     Requiring Defendant to conduct regular database scanning and securing checks;

xi.    Requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

additional training to be provided as appropriate based upon the employees'
respective responsibilities with handling Personal Information, as well as
protecting the Personal Information of Plaintiff and Class Members;

xii.   Requiring Defendant to routinely and continually conduct internal training and
education, and, on an annual basis, to inform internal security personnel how
to identify and contain a breach when it occurs and what to do in response to a
breach;

xiii.  Requiring Defendant to implement a system of tests to assess their respective
employees' knowledge of the education programs discussed in the preceding
subparagraphs, as well as randomly and periodically testing employees'
compliance with Defendant's policies, programs, and systems for protecting
Personal Information;

xiv.   Requiring Defendant to implement, maintain, regularly review, and revise as
necessary a threat management program designed to appropriately monitor
Defendant's information networks for threats, both internal and external, and
assess whether monitoring tools are appropriately configured, tested, and
updated;

xv.    Requiring Defendant to provide out-of-pocket expenses associated with the
prevention, detection, and recovery from identity theft, tax fraud, and/or
unauthorized use of their PII for Plaintiff's and Class Members' respective
lifetimes;

xvi.   Requiring Defendant to meaningfully educate all Class Members about the
threats that they face as a result of the loss of their confidential Personal
Information to third parties, as well as the steps affected individuals must take
to protect themselves;

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

xvii.  Requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xviii.  For a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment;

D.  An award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law;

E.  An award of attorney's fees, costs, and expenses, as permitted by law;

F.  An award of pre-judgment and post-judgment interest, as permitted by law;

G.  Leave to amend this Complaint to conform to the evidence produced at trial; and

H.  Such other and further relief as this Court may deem just and proper.

DATED this 4th day of December 2023.              Respectfully Submitted,

/s/ Timothy W. Emery
/s/ Patrick B. Reddy
TIMOTHY W. EMERY
WSBA No. 34078
PATRICK B. REDDY
WSBA No. 34092
**EMERY REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106
Fax: (206) 441-9711
Email: *emeryt@emeryreddy.com*
Email: *reddyp@emeryreddy.com*

M. Anderson Berry*
Gregory Haroutunian*
Brandon P. Jack*
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

865 Howe Avenue
Sacramento, CA 95825
Telephone: 916.239.4778
Fax: 916.924.1829
*aberry@justice4you.com*
*gharoutunian@justice4you.com*
*bjack@justice4you.com*

*\*pro hac vice forthcoming*

*Counsel for Plaintiff and the Putative Class*

**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

*EXHIBIT A*

Proliance Surgeons
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998



PIZCJR00207961
TRACI MARIE BARNES
600 STEWART ST STE 1100
SEATTLE, WA 98101-1269
ılıılıılıılılılıılıılılılılıılıılıılıılı

***IMPORTANT INFORMATION***
***PLEASE REVIEW CAREFULLY***



November 20, 2023

Dear Traci:

Proliance Surgeons ("Proliance") is committed to our patients, their treatment, and their families – as well as protecting the privacy and security of their personal information. We are writing with important information regarding a data security incident that may have affected your personal information. The privacy and security of the information we maintain is of the utmost importance to Proliance Surgeons. We wanted to provide you with information about the incident and let you know that we continue to take significant measures to protect your information.

What Happened?

Proliance detected that certain systems within our network had been affected by a cybersecurity incident. The incident resulted in the potential unauthorized access and/or acquisition of certain files from the network, which occurred on February 11, 2023.

What We Are Doing

Upon detecting the incident, Proliance commenced an immediate and thorough investigation, contained the network, alerted law enforcement, and notified certain individuals whose personal information was present in the above-mentioned files. As part of our investigation, Proliance engaged third party cybersecurity professionals to investigate the extent of the activity and what, if any, additional individual personal information may have been accessed and/or acquired by an unauthorized party. On May 24, 2023, we discovered that certain additional files involved in the incident could have contained personal information but had not yet identified the specific individuals involved. As a result, we posted a notice to our website about the incident, and included steps individuals could take to protect their personal information. We conducted a detailed and comprehensive review of all the data involved, and determined on September 22, 2023 that your information was present in the additional files potentially accessed and/or acquired by an unauthorized party. We immediately took steps to notify you of the incident and provide you with information to safeguard your personal information.

What Information Was Involved?

The information potentially involved includes your name and Medical Information, Diagnosis and Treatment Information and Health Insurance Information.

What You Can Do

This letter also provides other precautionary measures you can take to protect your information, including placing a fraud alert and/or security freeze on your credit files, and/or obtaining a free credit report. Additionally, you should always remain vigilant in reviewing your financial account statements, explanation of benefits, and credit reports for fraudulent or irregular activity on a regular basis.

For More Information

Proliance values your privacy and deeply regrets that this incident has occurred. We take the security of your information very seriously and have taken many additional precautions to safeguard it. We continually evaluate and modify our practices to enhance the security and privacy of your information.  Since detecting the incident, we have reviewed and revised our information security practices, and implemented additional security measures to mitigate the chance of a similar event in the future.

If you have any further questions regarding this incident, please call our dedicated and confidential toll-free response line that we have set up to respond to questions at 1-833-609-3856. This response line is staffed with professionals familiar with this incident and knowledgeable on what you can do to help protect against misuse of your information. The response line is available Monday through Friday, 8:00 am to 8:00 pm Eastern Time, excluding holidays.

Sincerely,


Proliance Surgeons

# OTHER IMPORTANT INFORMATION

### 1.    Placing a Fraud Alert on Your Credit File.

We recommend that you place an initial 90-day "Fraud Alert" on your credit files, at no charge. A fraud alert tells creditors to contact you personally before they open any new accounts. To place a fraud alert, call any <u>one</u> of the three major credit bureaus at the numbers listed below. As soon as one credit bureau confirms your fraud alert, they will notify the others.

| *Equifax* | *Experian* | *TransUnion* |
|---|---|---|
| P.O. Box 105069 | P.O. Box 9554 | Fraud Victim Assistance Department |
| Atlanta, GA 30348-5069 | Allen, TX 75013 | P.O. Box 2000 |
| https://www.equifax.com/personal/credit-report-services/credit-fraud-alerts/ | https://www.experian.com/fraud/center.html | Chester, PA 19016-2000 |
| (800) 525-6285 | (888) 397-3742 | https://www.transunion.com/fraud-alerts |
| | | (800) 680-7289 |

### 2.    Placing a Security Freeze on Your Credit File.

If you are very concerned about becoming a victim of fraud or identity theft, you may request a "Security Freeze" be placed on your credit file at no cost. A security freeze prohibits, with certain specific exceptions, the consumer reporting agencies from releasing your credit report or any information from it without your express authorization. You may place a security freeze on your credit report by sending a request in writing, by mail, to <u>all three</u> nationwide credit reporting companies. To find out more on how to place a security freeze, you can use the following contact information:

| *Equifax Security Freeze* | *Experian Security Freeze* | *TransUnion Security Freeze* |
|---|---|---|
| P.O. Box 105788 | P.O. Box 9554 | P.O. Box 160 |
| Atlanta, GA 30348-5788 | Allen, TX 75013 | Woodlyn, PA 19094 |
| https://www.equifax.com/personal/credit-report-services/credit-freeze/ | http://experian.com/freeze | https://www.transunion.com/credit-freeze |
| (888)-298-0045 | (888) 397-3742 | (888) 909-8872 |

In order to place the security freeze, you'll need to supply your name, address, date of birth, Social Security number and other personal information. After receiving your freeze request, each credit reporting company will send you a confirmation letter containing a unique PIN (personal identification number) or password. Keep the PIN or password in a safe place. You will need it if you choose to lift the freeze.

### 3.    Obtaining a Free Credit Report.

Under federal law, you are entitled to one free credit report every 12 months from <u>each</u> of the above three major nationwide credit reporting companies. Call **1-877-322-8228** or request your free credit reports online at **www.annualcreditreport.com**. Once you receive your credit reports, review them for discrepancies. Identify any accounts you did not open or inquiries from creditors that you did not authorize. Verify all information is correct. If you have questions or notice incorrect information, contact the credit reporting company.

### 4.     Protecting Your Health Information.

As a general matter the following practices can help to protect you from medical identity theft.

- Only share your health insurance cards with your health care providers and other family members who are covered under your insurance plan or who help you with your medical care.

- Review your "explanation of benefits" statement which you receive from your health insurance company. Follow up with your insurance company or the care provider for any items you do not recognize. If necessary, contact the care provider on the explanation of benefits statement and ask for copies of medical records from the date of the potential disclosure (February 11, 2023) to current date.

- Ask your insurance company for a current year-to-date report of all services paid for you as a beneficiary. Follow up with your insurance company or care provider for any items you do not recognize.

5.      <u>**Additional Helpful Resources.**</u>

Even if you do not find any suspicious activity on your initial credit reports, the Federal Trade Commission (FTC) recommends that you check your credit reports periodically. Checking your credit report periodically can help you spot problems and address them quickly.

If you find suspicious activity on your credit reports or have reason to believe your information is being misused, call your local law enforcement agency and file a police report. Be sure to obtain a copy of the police report, as many creditors will want the information it contains to absolve you of the fraudulent debts. You may also file a complaint with the FTC by contacting them on the web at www.ftc.gov/idtheft, by phone at 1-877-IDTHEFT (1-877-438-4338), or by mail at Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580. Your complaint will be added to the FTC's Identity Theft Data Clearinghouse, where it will be accessible to law enforcement for their investigations. In addition, you may obtain information from the FTC about fraud alerts and security freezes.

If your personal information has been used to file a false tax return, to open an account or to attempt to open an account in your name or to commit fraud or other crimes against you, you may file a police report in the City in which you currently reside.

**New York Residents:** You may obtain information about preventing identity theft from the New York Attorney General's Office: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; https://ag.ny.gov/consumer-frauds-bureau/identity-theft; Telephone: 800-771-7755.

**North Carolina Residents**: You may obtain information about preventing identity theft from the North Carolina Attorney General's Office: Office of the Attorney General of North Carolina, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, www.ncdoj.gov/, Telephone: 877-566-7226 (Toll-free within North Carolina), 919-716-6000.

**Maryland Residents**: You may obtain information about avoiding identity theft from the Maryland Attorney General's Office: Office of the Attorney General of Maryland, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, https://www.marylandattorneygeneral.gov/, Telephone: 888-743-0023.

**Iowa Residents**: You may contact law enforcement or the Iowa Attorney General's Office to report suspected incidents of identity Theft: Office of the Attorney General of Iowa, Consumer Protection Division, Hoover State Office Building, 1305 East Walnut Street, Des Moines, IA 50319, www.iowaattorneygeneral.gov, Telephone: 515-281-5164.

Proliance Surgeons
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998



PIZCJR00207964
KATINA MARIE RADDIGAN
600 STEWART ST STE 1100
SEATTLE, WA 98101-1269

*IMPORTANT INFORMATION*
*PLEASE REVIEW CAREFULLY*



November 20, 2023

Dear Katina:

Proliance Surgeons ("Proliance") is committed to our patients, their treatment, and their families – as well as protecting the privacy and security of their personal information. We are writing with important information regarding a data security incident that may have affected your personal information. The privacy and security of the information we maintain is of the utmost importance to Proliance Surgeons. We wanted to provide you with information about the incident and let you know that we continue to take significant measures to protect your information.

What Happened?

Proliance detected that certain systems within our network had been affected by a cybersecurity incident. The incident resulted in the potential unauthorized access and/or acquisition of certain files from the network, which occurred on February 11, 2023.

What We Are Doing

Upon detecting the incident, Proliance commenced an immediate and thorough investigation, contained the network, alerted law enforcement, and notified certain individuals whose personal information was present in the above-mentioned files. As part of our investigation, Proliance engaged third party cybersecurity professionals to investigate the extent of the activity and what, if any, additional individual personal information may have been accessed and/or acquired by an unauthorized party. On May 24, 2023, we discovered that certain additional files involved in the incident could have contained personal information but had not yet identified the specific individuals involved. As a result, we posted a notice to our website about the incident, and included steps individuals could take to protect their personal information. We conducted a detailed and comprehensive review of all the data involved, and determined on September 22, 2023 that your information was present in the additional files potentially accessed and/or acquired by an unauthorized party. We immediately took steps to notify you of the incident and provide you with information to safeguard your personal information.

What Information Was Involved?

The information potentially involved includes your name and Medical Information, Diagnosis and Treatment Information and Health Insurance Information.

What You Can Do

This letter also provides other precautionary measures you can take to protect your information, including placing a fraud alert and/or security freeze on your credit files, and/or obtaining a free credit report. Additionally, you should always remain vigilant in reviewing your financial account statements, explanation of benefits, and credit reports for fraudulent or irregular activity on a regular basis.

For More Information

Proliance values your privacy and deeply regrets that this incident has occurred. We take the security of your information very seriously and have taken many additional precautions to safeguard it. We continually evaluate and modify our practices to enhance the security and privacy of your information. Since detecting the incident, we have reviewed and revised our information security practices, and implemented additional security measures to mitigate the chance of a similar event in the future.

If you have any further questions regarding this incident, please call our dedicated and confidential toll-free response line that we have set up to respond to questions at 1-833-609-3856. This response line is staffed with professionals familiar with this incident and knowledgeable on what you can do to help protect against misuse of your information. The response line is available Monday through Friday, 8:00 am to 8:00 pm Eastern Time, excluding holidays.

Sincerely,


Proliance Surgeons

## OTHER IMPORTANT INFORMATION

1.    **Placing a Fraud Alert on Your Credit File.**

We recommend that you place an initial 90-day "Fraud Alert" on your credit files, at no charge. A fraud alert tells creditors to contact you personally before they open any new accounts. To place a fraud alert, call any <u>one</u> of the three major credit bureaus at the numbers listed below. As soon as one credit bureau confirms your fraud alert, they will notify the others.

| *Equifax* | *Experian* | *TransUnion* |
|---|---|---|
| P.O. Box 105069 | P.O. Box 9554 | Fraud Victim Assistance Department |
| Atlanta, GA 30348-5069 | Allen, TX 75013 | P.O. Box 2000 |
| https://www.equifax.com/personal/cre | https://www.experian.com/fraud/ | Chester, PA 19016-2000 |
| dit-report-services/credit-fraud-alerts/ | center.html | https://www.transunion.com/fraud- |
| (800) 525-6285 | (888) 397-3742 | alerts |
| | | (800) 680-7289 |

2.    **Placing a Security Freeze on Your Credit File.**

If you are very concerned about becoming a victim of fraud or identity theft, you may request a "Security Freeze" be placed on your credit file at no cost. A security freeze prohibits, with certain specific exceptions, the consumer reporting agencies from releasing your credit report or any information from it without your express authorization. You may place a security freeze on your credit report by sending a request in writing, by mail, to <u>all three</u> nationwide credit reporting companies. To find out more on how to place a security freeze, you can use the following contact information:

| *Equifax Security Freeze* | *Experian Security Freeze* | *TransUnion Security Freeze* |
|---|---|---|
| P.O. Box 105788 | P.O. Box 9554 | P.O. Box 160 |
| Atlanta, GA 30348-5788 | Allen, TX 75013 | Woodlyn, PA 19094 |
| https://www.equifax.com/personal/cred | http://experian.com/freeze | https://www.transunion.com/credit- |
| it-report-services/credit-freeze/ | (888) 397-3742 | freeze |
| (888)-298-0045 | | (888) 909-8872 |

In order to place the security freeze, you'll need to supply your name, address, date of birth, Social Security number and other personal information. After receiving your freeze request, each credit reporting company will send you a confirmation letter containing a unique PIN (personal identification number) or password. Keep the PIN or password in a safe place. You will need it if you choose to lift the freeze.

3.    **Obtaining a Free Credit Report.**

Under federal law, you are entitled to one free credit report every 12 months from <u>each</u> of the above three major nationwide credit reporting companies. Call **1-877-322-8228** or request your free credit reports online at **www.annualcreditreport.com**. Once you receive your credit reports, review them for discrepancies. Identify any accounts you did not open or inquiries from creditors that you did not authorize. Verify all information is correct. If you have questions or notice incorrect information, contact the credit reporting company.

4.    **Protecting Your Health Information.**

As a general matter the following practices can help to protect you from medical identity theft.

- Only share your health insurance cards with your health care providers and other family members who are covered under your insurance plan or who help you with your medical care.

- Review your "explanation of benefits" statement which you receive from your health insurance company. Follow up with your insurance company or the care provider for any items you do not recognize. If necessary, contact the care provider on the explanation of benefits statement and ask for copies of medical records from the date of the potential disclosure (February 11, 2023) to current date.

- Ask your insurance company for a current year-to-date report of all services paid for you as a beneficiary. Follow up with your insurance company or care provider for any items you do not recognize.

5.    **Additional Helpful Resources.**

Even if you do not find any suspicious activity on your initial credit reports, the Federal Trade Commission (FTC) recommends that you check your credit reports periodically. Checking your credit report periodically can help you spot problems and address them quickly.

If you find suspicious activity on your credit reports or have reason to believe your information is being misused, call your local law enforcement agency and file a police report. Be sure to obtain a copy of the police report, as many creditors will want the information it contains to absolve you of the fraudulent debts. You may also file a complaint with the FTC by contacting them on the web at www.ftc.gov/idtheft, by phone at 1-877-IDTHEFT (1-877-438-4338), or by mail at Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580. Your complaint will be added to the FTC's Identity Theft Data Clearinghouse, where it will be accessible to law enforcement for their investigations. In addition, you may obtain information from the FTC about fraud alerts and security freezes.

If your personal information has been used to file a false tax return, to open an account or to attempt to open an account in your name or to commit fraud or other crimes against you, you may file a police report in the City in which you currently reside.

**New York Residents:** You may obtain information about preventing identity theft from the New York Attorney General's Office: Office of the Attorney General, The Capitol, Albany, NY 12224-0341; https://ag.ny.gov/consumer-frauds-bureau/identity-theft; Telephone: 800-771-7755.

**North Carolina Residents**: You may obtain information about preventing identity theft from the North Carolina Attorney General's Office: Office of the Attorney General of North Carolina, Consumer Protection Division, 9001 Mail Service Center, Raleigh, NC 27699-9001, www.ncdoj.gov/, Telephone: 877-566-7226 (Toll-free within North Carolina), 919-716-6000.

**Maryland Residents**: You may obtain information about avoiding identity theft from the Maryland Attorney General's Office: Office of the Attorney General of Maryland, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, https://www.marylandattorneygeneral.gov/, Telephone: 888-743-0023.

**Iowa Residents**: You may contact law enforcement or the Iowa Attorney General's Office to report suspected incidents of identity Theft: Office of the Attorney General of Iowa, Consumer Protection Division, Hoover State Office Building, 1305 East Walnut Street, Des Moines, IA 50319, www.iowaattorneygeneral.gov, Telephone: 515-281-5164.